STOOMVART MAATSCHAFFY NEDERLANDSCHE LLOYD v. LIND et al.

(Circuit Court of Appeals, Second Circuit. May 19, 1909.)

No. 228.

1. SHIPPING (§ 175*)—DEMURRAGE—RIGHTS OF CHARTERER.

A vessel, under charter to load at either one of three ports at the charterer's option, and which has been ordered to one where she cannot be loaded without delay, is not bound to remove to another to save the charterer demurrage, and does not forfeit the right to demurrage because she demands for such removal a sum which the charterer refuses to pay.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 175.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Morton, 46 C. C. A. 4.]

2. DAMAGES (§ 62*)—BREACH OF CONTRACT—DUTY OF PARTY TO PREVENT DAMAGE TO OTHER PARTY.

A party to a contract, whose rights have not been violated, is not bound to take steps to reduce the damages which the other party, without his fault, may sustain if the contract is performed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–132; Dec. Dig. § 62.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

J. Parker Kirlin and John M. Woolsey, for appellant.
Wilcox & Green (Herbert Green, of counsel), for appellees.

Before LACOMBE, WARD and NOYES, Circuit Judges.

WARD, Circuit Judge. The respondent, having a contract with the government to transport coal to Honolulu, chartered the steamer Nederland to carry a cargo from Baltimore, Norfolk, or Newport News, at charterer's option. The charter provided that the steamer was to be given government dispatch for loading, and the parties agree that demurrage was to be at the rate of 8 cents per net registered ton, or $207.04 per day. Government dispatch at Newport News gives steamers loading for the government precedence at the loading berths over all other vessels and the greatest dispatch in loading. The charterer exercised its option by ordering the steamer to Newport News, where she arrived August 7th at 5:30 p. m. and reported ready to load.

The district judge found she could have been loaded in less than three days, beginning August 8th at 7 a. m.; that is, by August 11th at 7 a. m. The only thing that prevented immediate loading was the fact that the government had no coal ready. Accordingly August 9th the charterer, after communicating with Washington, ordered the steamer to go to Baltimore for her cargo. This they had no right to do, because the charter had become, by virtue of their ordering her to Newport News, an agreement to carry from Newport News to Honolulu. The owners, however, consented to the change, provided the charterer would pay for loss of time and port charges at Newport News and expenses of shifting to Baltimore. August 10th the charterer refused this proposition, saying that unless the steamer agreed to go to Baltimore she might wait at Newport News to load. August 13th the charterer ordered the steamer to shift to Norfolk for cargo, agreeing to pay the shifting expenses. The owners replied they would go there on payment of £400, which proposition the charterer refused. The steamer accordingly lay at Newport News and did not begin loading until September 3d at 7 a. m., finishing with her cargo September 5th at 2 p. m.

The libel was filed to recover for 26 days' demurrage; that is, from August 10th at noon to September 5th at 2 p. m. This allowed the charterers 2½ days for loading cargo, which was the time actually used. The district judge, however, allowed demurrage only from August 8th to 13th, inclusive, being 6 days, aggregating $1,242.24, and expenses of cables to August 10th, $5.95—in all, $1,248.19. He refused demurrage after August 13th on the ground that the demand of £400 as a condition of shifting to Norfolk was wholly unreasonable. We cannot agree with this conclusion. If unreasonableness is to be considered, it was no more unreasonable for the steamer to refuse to move for a sum in excess of what was subsequently awarded her than it was for the charterer to refuse to pay any part of that sum. Besides, the proofs indicate that the owners, because of the negotiations, incurred legal traveling and cable expenses, amounting to several hun-

dred dollars, which, if proved, would bring their actual loss nearly up to £400.

We think that the district judge proceeded upon an erroneous view of the law in holding that the owners were bound to reduce the charterer's loss as much as possible. The owners' rights had not been violated, and they had sustained no loss because of the charterer's order to shift, first to Baltimore and afterwards to Norfolk. When a contract is entirely repudiated, the party whose rights are violated is bound to take all reasonable steps to reduce his own loss, and cannot recover damages which by reasonable care he might have prevented. Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117. This charter, however, never was repudiated. On the contrary, the steamer actually loaded and carried the cargo under it.

It is also true that one party cannot insist upon performing any part of a contract for the benefit of the other which the other notifies him not to perform. It is, however, equally true that one party cannot compel the other affirmatively to do something which the contract does not require of him. Men generally being reasonable, such departures from agreements are usually accomplished amicably; but they cannot be compelled. Whether the shipowner in this case was reasonable, or not, in its refusal to shift to Norfolk except upon its own terms, it had a right to refuse, because there was nothing in the charter compelling it to shift.

The decree is reversed, and the court below instructed to enter a decree in favor of the libelant for 26 days' demurrage, together with any expenses it may be found entitled to recover if it elect to take a reference.